MUNCASTER (MASON v.). See Cases Nos. 9,247 and 9,248.

---

## Case No. 9,921.

MUNCH et al. v. The SUCKER STATE.

[4 Chi. Leg. News, 201.]

District Court, D. Minnesota. 1872.

COLLISION—OWNERSHIP OF VESSEL—MEASURE OF DAMAGES—REPAIRS—LOSS OF SERVICES.

1. The ownership of a boat, at least so far as to make out a prima facie case, may be proved in the same manner as of any other chattel.

2. The court states the facts relating to the collision, and finds that the steamer was managed with carelessness and must pay the damage.

3. The amount paid for repairs is a proper item, and the owners of the barge are entitled to recover damages for the loss of her services while she was undergoing repairs, and the court allows the highest rate of interest permitted in Minnesota during the time the barge was undergoing repairs, upon her value as a measure of damages for her detention.

[This was a libel by Emil Munch, Gustave Munch, and Adolph Stierle against the steamer Sucker State.]

H. J. Horn, for libellants.
C. K. Davis, contra.

NELSON, District Judge. The owners of the barge Eveline filed a libel against the steamer Sucker State, her engines, machinery, boat's tackle, apparel and furniture, claiming damages for a collision through the fault of the steamer whereby the barge was severely injured and rendered unserviceable for a long period. The barge was lying safely moored at the levee at the city of Hastings on the Mississippi river when the collision occurred. The steamer was coming down the river on Sept. 1st, 1870, at mid-day, and approaching the city of Hastings headed towards the shore, the current being rapid and the wind blowing fresh and quartering upon the levee, to effect a landing a short distance above the place where the barge was moored. It is claimed that owing to the gross negligence and mismanagement of the steamer, she swung around against the barge as her bow struck the shore with great force, and crushed and broke in her side, so that she rapidly filled with water and was only prevented from sinking by dragging her out upon dry land. The barge was clearly visible by those in charge of the steamer, and it is alleged that the collision took place without any fault of the barge or of her owners. Damages to the amount expended in making necessary repairs are claimed and loss of services at the rate of five dollars per day for forty-seven days. The steamer was arrested pursuant to the process issued and the claimants appeared and entered into a stipulation for an amount sufficient to cover the damages claimed. The claimants in their answer put in issue the ownership of the barge as claimed in the libel, and allege that the barge was old, rotten, leaky and unseaworthy, and they deny that any repairs were rendered necessary or that the libellants lost the use of her by reason of any act committed by the steamer. They allege that a landing was effected at Hastings skillfully and in a seamanlike manner, and that they run alongside of the barge carefully, and deny that the steamer swung around with such force as to crush the barge or injure her as stated in the libel. They charge that if any injury happened, it was owing to the fact that the barge was rotten, old and leaky and unseaworthy.

The right of libellants to enforce their claim as owners was raised on the hearing. The respondents objected to any parol evidence of ownership. An executory contract entered into in writing before the collision for the sale of the barge to two of the libellants was offered, and also the enrollment with a bill of sale accompanying it, but the bill of sale was dated subsequently to the time when the collision occurred. Parol evidence was then offered to show that the barge was really delivered at the date of the executory contract, and that the other libellant purchased an interest in her, and was part owner at the time of the injury. This testimony is admissible as also the further evidence that the bill of sale attached to the enrollment was dated by mistake to conform to the time of enrollment, instead of a period anterior to the collision. The ownership of the boat, at least so far as to make out a prima facie case, may be proved in the same manner as of any other chattel, and the testimony offered showed, unrebutted, a right in the libellants to maintain this action.

The witnesses on both sides testify that the steamer struck the barge in landing, and the weight of evidence sustains the charge in the libel, that it was with great force and accompanied with a crushing sound, that indicated a breaking in of the sides of the barge. The captain of the steamer appears to have appreciated the danger of attempting a landing above the barge, and cautioned the pilot about hazarding it, who in obedience to orders, backed her so as to pass below, but subsequently learning that freight was to be taken on at a warehouse just above, moved up ahead of the barge. In doing this the steamer, when her bow was turned out into the stream, touched the stern of the barge, swung in and lapped her. She struck, according to the testimony of those on shore, with such force as to attract their attention. The mail agent says: "She struck harder than she would have done on still water," but thinks the injury resulted from the barge being rotten and weak. The testimony of those on shore and near the barge, and who went to her assistance and relieved her from water with the pumps, is decisive upon the fact of damage done by the collision, and it is also clear that a landing could have been easily made above or below, without any diffi-

culty, as the levee is some four hundred feet long. The barge also proved to have been unseaworthy. She was built of oak in 1867, just three years previous, and although leaking some, was serviceable, and capable of being used daily. She was safely moored at a public landing, and it was incumbent on the steamer to keep out of her way. By landing as she did she took all of the risk of damage. It was dangerous to swing the steamer against the barge with the wind blowing fresh upon the shore and the current running strong, and she must be held responsible for the loss sustained. The steamboat having the power to be moved and stopped at pleasure, was presumptively managed with carelessness, and must pay the damage.

I am not so clear upon the extent of the liability. The amount paid for repairs is a proper item of allowance, and is sustained as claimed.

Upon the claim for loss of service, there is great difficulty in laying down a certain and safe rule. The doctrine of restitutio in integrum must govern in all cases; but the difficulty is as to the proper application of the maxim. In the case of The Narragansett [Case No. 10,017], the court says: "That it is impossible to fix with exactness the time indispensable for the repair of the injured vessel or the value of her services during the period of her disablement. These particulars must necessarily rest in a great degree upon estimates," but an allowance was made and sustained by the appellate court, with the remark, "that such an allowance for loss of services while the vessel is undergoing repairs, seems proper according to the maritime law." It does not appear in this case, how the amount was arrived at. In the case of The Rhode Island [Id. 11,744], an allowance was made by the commissioner to whom it was referred of a per diem compensation for each day after the collision until after the damaged vessel was repaired, for an amount which, according to the evidence, would have enabled her owners to supply her place with a vessel to perform her work. No vessel to perform her work during the interval was hired, and that was the case here. The court sent the report of the commissioner back disallowed, and ordered six per cent. interest per annum upon the value of the vessel before the damage, to be allowed during the detention, instead of the former allowance. On appeal the action was sustained, and the court say: "The allowance was for a supposed or apparent loss incident to the damage done by the collision in regard to which no settled rule can be found; opinion being conflicting whether anything should be allowed, and if anything, by what measure the allowance should be determined. * * * We sustain it not because it was founded upon any established principles, but because no principle could be found that would justify the adoption of a higher measure of damages in the case." In the case of Williamson v.

Barrett, 13 How. [54 U. S.] 101, which was a case at common law, and tried before a jury in the court below, an exception had been taken to the charge of the court that in addition to damages for an amount expended in repairing the boat, the jury should give damages for the use of her during the time necessary to make the repairs and fit her for business. The court says: "The general rule regulating damages in cases of collision is to allow the injured party an indemnity to the extent of the loss sustained, * * * but there is a good deal of difficulty in stating the grounds upon which to arrive, in all cases, at the proper measure of that indemnity. * * * The difficulty lies in estimating the damage sustained by the loss of the service of the vessel, while she is undergoing repairs." The question is discussed at some length, and it is said that "the market price for the hire of the vessel which can be determined by the demand in the market for vessels of the same description, and the price which the owner could or might have obtained for his vessel," is as fair a test as can be applied to ascertain the damage. This, no doubt is the ordinary and safe rule, but as was stated by Mr. Justice Catron in his dissenting opinion, "the supposition that the amount of damages can easily be fixed by proof of what the injured boat could have been hired for during her detention, will turn out to be a barren theory on our Western rivers." The claim for the service of the barge in this case, is too high, and I am not satisfied with the testimony offered to sustain it. Her value is fixed at eight hundred dollars as the highest figure. The damage for loss of service claimed, is nearly equal to one-fourth of this sum; and that too for only forty-seven days' service. I do not think it is sufficiently clear that her service was equal to such an amount. She was leaky before the collision and the oakum was out of the seams for some distance along her sides. She stood in need of thorough repair, although her owner might have used her in carrying lumber through the season of navigation. There was a loss of service; however, to the owners, and they are entitled to compensation. It seems to me to be a just and fair indemnity, inasmuch as her owners did not deem it necessary to hire any boat in her place to enable them to continue the business, to allow the highest rate of interest permitted in this state, during the time she was undergoing repairs, upon her value. as a measure of damages for detention. This recognizes the barge as so much capital unemployed and incapable of producing income on account of the collision. I regard this rule of damages justifiable on account of the insufficiency of the testimony to warrant any other estimate. The clerk will make the computation and enter a decree accordingly, with interest and costs.